**TROUTMAN PEPPER
HAMILTON SANDERS LLP**

Justin D. Balser, Bar No. 027850
justin.balser@troutman.com
5 Park Plaza
Suite 1400
Irvine, CA 92614
Telephone:  949.622.2700
Facsimile:   949.622.2739

Ben Lewis Wagner, Cal. Bar No. 243594
(*pro hac vice forthcoming*)
ben.wagner@troutman.com
11682 El Camino Real
Suite 400
San Diego, CA  92130-2092
Telephone:  858.509.6000
Facsimile:   858.509.6040

Bryan M. Rizza, Mass. Bar No. 709957
(*pro hac vice forthcoming*)
bryan.rizza@troutman.com
High Street Tower
125 High St, 19th Floor
Boston, MA 02110
Telephone:  617.204.5100

Attorneys for Plaintiff
SLEEP NUMBER CORPORATION

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| SLEEP NUMBER CORPORATION, a Minnesota Corporation,<br><br>            Plaintiff,<br><br>     vs.<br><br>OMRI SHALOM,  an individual; SILVER SCOPE MEDIA LTD. A UK private limited company; DOES 1-5<br><br>            Defendants. | Case No. _____<br><br>**VERIFIED COMPLAINT**<br><br>**[RELATED CASE: 2:23-CV-00377-PHX-MTL]**<br><br>**[JURY TRIAL DEMANDED]** |

165025482

The Court will recall that SLEEP NUMBER was before it earlier this year where the Court returned the stolen Comfort.com to its rightful owner. SLEEP NUMBER recently discovered the same thieves also stole BEDS.COM, except that they found a buyer who gave them what the buyer admits being a mere 5% of the domain's actual value. Imagine buying a ritzy $3.5 million house for under $200k –that's the equivalent of what happened here.

But receipt of stolen property for 5% of its value does not entitle the new registrant to keep the domain. Defendants must give back the stolen property they received, and if they believe they were wronged by DOES 1-5 (the thieves that stole the domain from SLEEP NUMBER), then their remedy (if any) remains solely against DOES 1-5.

And so Plaintiff SLEEP NUMBER CORPORATION brings suit for conversion, cybersquatting under the Lanham Act, and fraudulent transfer against (1) DOES 1-5 (the thief or thieves), and (2) the transferee and current joint registrants, Defendants OMRI SHALOM and SILVER SCOPE MEDIA ("Defendants"), and alleges and states as follows:

## THE PARTIES

1. Plaintiff SLEEP NUMBER CORPORATION ("Plaintiff" or "SLEEP NUMBER") is a Minnesota corporation with its principal place of business at 1001 Third Avenue, South Minneapolis, MN 55404.

2. Defendants OMRI SHALOM and SILVER SCOPE MEDIA LTD ("SILVER SCOPE") are the currently listed joint registrants of BEDS.COM (also herein, "the Stolen Domain"). OMRI SHALOM ("SHALOM") is on information and belief a UK resident, while SILVER SCOPE MEDIA LTD. is on information and belief a UK private limited company owned and managed by SHALOM. On information and belief, both SHALOM and SILVER SCOPE's respective citizenship, residence and principal place of business in the UK.

3. DOES 1-5 are the thieves that stole the Stolen Domain from SLEEP NUMBER. They gained illicit access to Plaintiff's online domain name accounts and

transferred the domains to themselves or their agents in order to sell the stolen domain names (COMFORT.COM and BEDS.COM) and place the money received beyond the perceived reach of Plaintiff and the relevant authorities.  SLEEP NUMBER is currently unaware of the names and identities of DOES 1-5 and thus names them under these fictitious names to bring suit against them;  upon learning the names, DOES 1-5 will be named by their true identities.

4. Defendants SHALOM and SILVER SCOPE'S actions alleged herein were those of themselves, their agents and/or licensees, and they are jointly and severally liable for the conduct of one another as though taken themselves.

5. The *in rem* claim is asserted under the provisions of the ACPA 15 U.S.C. § 1125(d), against the Stolen Domain.

6. SLEEP NUMBER seeks an order compelling transfer of the BEDS.COM domain name so that it may be returned to the registration of SLEEP NUMBER, compensatory damages, all funds obtained in relation to the website, and attorneys' fees and costs so awardable.

## JURISDICTION AND VENUE

7. This court has subject matter jurisdiction over the claim of cybersquatting under the Lanham Act and the state law claims for conversion and fraudulent transfer under 28 U.S.C. § 1367 as they arise from the same nucleus of operative facts and forms part of the same case and controversy.

8. This Court further has diversity jurisdiction under 28 U.S.C. § 1332, as the parties are completely diverse with Defendants residing in and being citizens of the UK and Plaintiff being a Minnesota corporation with its principal place of business in Minneapolis, Minnesota.

9. *In rem* jurisdiction and venue over the Stolen Domain are proper in this judicial district pursuant to 15 U.S.C. § 1125 *et seq*. because (1) the website violates the rights of the trademark holder, SLEEP NUMBER; (2) the Court may find SLEEP NUMBER is unable to obtain in personam jurisdiction over the Defendants or any other

1   person who would be a defendant under 15 U.S.C. § 1125(d)(1); and (3) *in rem*

2   jurisdiction over domain names is proper in the place of incorporation of the registrar for

3   the domain name, which is Maricopa County, Arizona for the registrar here, Namecheap,

4   Inc. *See* 15 U.S.C. 1125(d)(2)(A). Therefore, federal courts in Arizona have proper *in*

5   *rem* jurisdiction because the registrar of the domain name, as Namecheap is located within

6   the District of Arizona, a Delaware corporation with its principal place of business in

7   Phoenix, Arizona. *In rem* jurisdiction is unnecessary to the extent the Court finds the

8   Defendants subject to personal jurisdiction under the forum-selection clause in the

9   GoDaddy registration agreement.

10      10. The Defendants are subject to personal jurisdiction and venue in this forum by

11   virtue of its forum selection clause.

12      11. Specifically, Defendants maintain their registration through the Registrar

13   Namecheap as confirmed by the WHOIS report. Pursuant to the Registration Agreement

14   agreed to by Defendants for the Stolen Domain, specifically Paragraph 29:

15   "Notwithstanding the foregoing, for the adjudication of third party disputes (i.e., disputes

16   between you and another party, not us) concerning or arising from use of domain names

17   registered hereunder, you shall submit without objection, without prejudice to other

18   potentially applicable jurisdictions, to the subject matter and personal jurisdiction of the

19   courts (i) of the domicile of the registrant as it appears in the public WHOIS record for the

20   domain name(s) in controversy, and (ii) where we are located, currently those State or

21   federal courts whose geographic districts include Maricopa County, State of Arizona." All

22   claims asserted herein "concern[] or aris[e] from use of domain names registered

23   hereunder [BEDS.COM]," as Defendants' receipt, continued registration and offering for

24   sale of the BEDS.COM is the basis of all claims.

25      12. Further, prior to Namecheap, the Stolen Domain was registered by one or

26   more Defendants with Go Daddy, who is also located in Phoenix, Arizona and similarly

27   has a registration agreement that Defendants agreed to which also provides that the

28   Defendants submitted to exclusive jurisdiction over claims relating to the Stolen Domain

in Arizona, specifically the federal and state courts of Maricopa County, Arizona, a forum selection clause that this Court already enforced against DOES 1-5 in granting judgment in the Comfort.com case.

13. Thus, Defendants are subject to personal jurisdiction in Arizona and venue in this federal court pursuant to their voluntary forum selection clause. *LimoStars, Inc. v. N.J. Car & Limo, Inc.*, 2011 U.S. Dist. LEXIS 87771, *12-15, 2011 WL 3471092 (D. Az. Aug. 8, 2011) ("By registering the [domain] through Go Daddy, Inc., [Defendant] consented to personal jurisdiction in this District.").

## PLAINTIFF'S BUSINESS AND INTELLECTUAL PROPERTY

14. SLEEP NUMBER manufactures, markets, and sells air-adjustable sleep systems and has done so since 1987. SLEEP NUMBER CORPORATION was formerly known as SELECT COMFORT CORPORATION and has sold products under the brands Sleep Number and Select Comfort. SELECT COMFORT CORPORATION acquired the assets of COMFORTAIRE CORPORATION in 2013. SLEEP NUMBER owns dozens of patents covering its unique beds.

15. SLEEP NUMBER is a publicly-traded company with annual sales approaching $2 billion, and approximately 5,000 employees. Its SLEEP NUMBER (U.S. Reg. No. 2,149,899, first use 2002) trademark is registered and famous trademarks, with extensive secondary meaning in the United States.

16. When the internet was in its early stages, SLEEP NUMBER saw the value of the BEDS.COM domain, like other companies acquiring domains like HOTELS.COM and BOOKING.COM. Recently, the Supreme Court in the BOOKING.COM case recognized that, in addition to being property, domain names such as this warrant trademark protection.

17. Thus, in 1995, SLEEP NUMBER (then known as SELECT COMFORT CORPORATION) acquired BEDS.COM. Its operation of BEDS.COM over the past more than two decades resulted in many millions of consumers visiting BEDS.COM. SLEEP NUMBER'S use of BEDS.COM for this extended period gives it common law rights in

the BEDS.COM trademark, in addition to its federally-registered SLEEP NUMBER mark, which are both strong marks. Since that time, the domain has consistently been a major landing page for consumers looking to purchase products under the Sleep Number and Select Comfort brands, with examples of its historical home pages below:



**March 2013**



**August 2002**



**March 2016**

18. The focus of Beds.com, as memorialized in a June 27, 2007 presentation was to provide a centralized location for blog content and education relating to sleep, with the ultimate goal being to provide Sleep Number and Sleep Comfort products as sleep solutions to interested consumes.

19. Specifically, while research showed the vast majority of blog posts were positive to Sleep Number and Sleep Comfort, an aggregator site was needed that could collect and amplify owner voices to strengthen their collective voices and at the same time provide a service-oriented site to provide credible and trustworthy information about sleep, beds and the Sleep Number products central to that ecosystem.

20. Thus, Beds.com became a trusted source for credible information relating to the sleep journey, and also inextricably linked with Sleep Number (and predecessor Select Comfort) as the natural fit and solution to users' sleep needs.

21. Thus, along with heavy advertising and focus on SEO, the BEDS.COM domain name and trademark was used with countless millions of consumers and strongly associated with the Sleep Number and Select Comfort trademarks, prior to the hijacking of its BEDS.COM domain.

22. For example, splash page measurements from 2000 showed that during a sample period of November through December 2000 there were 500,334 distinct visits, which annualized represents 3,002,004 unique visits for 2000.

23. Just two years later, in an August 2002 communique from America Online, Inc., AOL estimated a one-year impression rate of 6 million for Beds.com, at an acquisition cost of an estimated advertising expense of millions of dollars.

24. The visits, traffic, and millions of dollars in strategic marketing of Beds.com resulted in the secondary meaning of Beds.com as a unique property associated with Sleep Number and Sleep Comfort, secondary meaning which continued to grow as time went on.

25. The strength of the BEDS.COM mark was further reinforced because BEDS.COM attained a large consumer following and forum to seek others using the Sleep Number system. Strong secondary meaning and rights to the trademark BEDS.COM had been acquired by SLEEP NUMBER long before the domain name theft, was retained throughout all relevant time periods, and has never been abandoned.

26. In or around 2019, SLEEP NUMBER decided to use all of that goodwill to redirect the customer base automatically to the SleepNumber.com website, thereby consolidating that goodwill associated with Beds.com and making its online presence more efficient to manage. Unfortunately, that also created an opportunity for theft to go unnoticed, should the opportunity to do so be exploited by an unsavory individual.

27. Just such opportunity was exploited by DOES 1-5. On or around December 22, 2021, DOES 1-5 made online access through computers to steal the registration for multiple domains from Plaintiff. On information and belief, DOES 1-5 exploited vulnerabilities to impersonate to NETWORK SOLUTIONS (Plaintiff's domain name registrar for COMFORT.COM and the Stolen Domain at the time) an authorized user of SLEEP NUMBER'S Network Solutions online account, and thereafter modified the relevant contact person and contact information to take over control of the COMFORT.COM and BEDS.COM domain name registrations. Then, using that new contact information, DOES 1-5 proceeded to transfer COMFORT.COM and the Stolen

1  Domain to GODADDY.COM as the Registrar, and placed the domains under
2  GODADDY.COM'S affiliate privacy protect proxy DOMAINS BY PROXY.

3      28.  SLEEP NUMBER first discovered the theft of COMFORT.COM on Tuesday, February 28, 2023, when the COMFORT.COM domain history indicates DOES 1-5 changed the domain's servers to sedoparking.com, reportedly located in Germany.  This interfered with SLEEP NUMBER'S backend systems run through COMFORT.COM, and it immediately investigated.

      29.  Aware at that time only of the theft of COMFORT.COM, Plaintiff sought immediate informal resolution, and immediately prepared and brought a lawsuit within two days, seeking emergency relief as to COMFORT.COM.

      30.  Plaintiff filed suit against the highjacker of unknown identity (DOES 1-5 here) in Arizona court and successfully attained TRO, preliminary and permanent injunctive relief for the first stolen domain COMFORT.COM. *See* Case No. D.Az. 2:23-CV-00377-PHX-MTL.  Thus, DOES 1-5 are bound by res judicata to the findings concerning hijacking, theft, conversion, CFAA violations and other findings.

      31.  Plaintiff did not learn of DOES 1-5's theft of BEDS.COM at that time.  BEDS.COM was not used for backend functions and was instead used at that point as a redirect to SleepNumber.com.  As a redirect, there was not content to update from time to time on the Stolen Domain itself, resulting in the theft going undetected for some time.  The theft of the Stolen Domain was only discovered through happenstance in September of 2023, with proceedings being filed a week later (as alleged further below).

      32.  Upon discovery of the theft, SLEEP NUMBER promptly investigated.  SLEEP NUMBER discovered that on or about February 16, 2023, the WhoIs registration information was removed and registration information changed once again to NAMECHEAP.COM, listing Omri Shalom/Silver Scope Media as the current registrant, thus unlike in the COMFORT.COM situation, DOES 1-5 were able to complete a transfer of the Stolen Domain to a third party.

33. The same week as discovering this alarming theft of the Stolen Domain, Plaintiff filed a Uniform Dispute Resolution (UDRP) Complaint, Case No. FA2309002062168 (the '2168 case) seeking to transfer ownership of the domain from Defendants based on the limited UDRP procedures available through that forum, which allows for expedient transfers of domains under certain circumstances but are non-binding if challenged in court.

34. Specifically, not disputing that the domain was stolen, SHALOM and SILVER SCOPE responded in the '2168 arbitration by arguing:

> "[A]ccusation of theft is indeed a serious one. However…This Panel is not a general domain name court, and the Policy is not designed to adjudicate all disputes of any kind that relate in any way to domain names…The Policy was not designed nor is it equipped to decide whether the Domain Name was taken without the Complainant's knowledge or consent…a Policy panel is incapable of resolving [such dispute]."

35. However, in addition to this argument that a court proceeding was the appropriate forum for the theft at issue here, SHALOM and SILVER SCOPE also admitted in their response to a host of facts.

36. Defendant admitted to purchasing the Domain through a back-channel auction deal for $172,500. Defendant also admitted to listing the domain for sale for at first for $3.5 million and now for $2.5 million.

37. In fact, SHALOM and SILVER SCOPE paid $172,500 for the BEDS.COM domain in February 2023 and immediately offered it for sale at $3.5 million by the very next month, thus confirming they knew its value was in the millions at the time of purchase.

38. Other potential bidders knew the transaction was suspicious, and thus the auction house had difficulty eliciting bids. The only other known bidder delayed and ultimately declined to purchase the Stolen Domain.

39. SHALOM admitted at one point during the discussions with the auction house that he believed "the email in the whois is fake," to which the auction house confirmed it

would be unable to reveal the identity of the anonymous seller or even so much as provide a photo ID. In fact, for at least some time during the process, DOES 1-5 hid their identity with respect to the Stolen Domain by providing false contact information to GODADDY.COM, the domain name registrar, using "BEDS" and "COM." *Id.* SHALOM was aware of these and other suspicious facts prior to his purchase, having reviewed the WHOIS registration history of the Stolen Domain.

40. Prior to acquiring the Stolen Domain, SHALOM reviewed the Internet Archive archive.org's domain history, showing extensive screenshots of SLEEP NUMBER'S historical pages on the domain as well as the redirect information showing the page operated more recently as a redirect to SleepNumber.com, as well as the WHOIS domain name registration history that confirmed that the longest owner of the domain was SLEEP NUMBER until odd registration activity (including the activity noted above) began occurring on or around December 22, 2021.

41. As a result, prior to SHALOM and SILVER SCOPE completing their purchase of the domain name for a mere approximate 5% of its actual value, they at a minimum had inquiry notice that the only legitimate and longtime owner of the domain was SLEEP NUMBER, that SLEEP NUMBER was not the seller of the domain through the auction house, and that the WHOIS information contained numerous pieces of fake registrant information following transfer away from SLEEP NUMBER.

42. SHALOM and SILVER SCOPE at no time contacted SLEEP NUMBER to inquire regarding the validity of title of the anonymous person or company attempting to sell the domain through the auction house. This would be like buying a multimillion dollar mansion for $172,500 without any meaningful satisfaction as to valid title.

43. SHALOM was also well-versed in online marketing and had prior experience with domain name purchases and sales.

44. In sum, SHALOM had at least inquiry notice that the price was way too low to be a legitimate sale of the Stolen Domain, and that the seller of the Stolen Domain did not have legitimate or lawful title or possession of the domain.

45. The '2168 arbitration ultimately resulted without transfer due to the limitations under that forum, pursuant to a November 2, 2023 panel decision in UDRP Case No FA2309002062168, which refusal to transfer is hereby challenged, disputed, and erroneous. Plaintiff seeks a declaration of the same along with other relevant claims.

46. Under the Uniform Domain Name Dispute Resolution Policy adopted by GoDaddy and Namecheap and agreed to by all Defendants in this action, Registrars and the Registrants agreed not to transfer the Stolen Domain for a period extending to no later than 15 business days after the later of the UDRP proceedings or this Court Action.

**FIRST CLAIM FOR RELIEF**
**In rem Cybersquatting claim under the Anti-Cybersquatting Consumer Protection Act — 15 U.S.C. § 1125(d)(2) against WWW.BEDS.COM**

47. Plaintiff realleges and incorporates by this reference each and every allegation set forth herein.

48. Defendants are in possession of a Stolen Domain after DOES 1-5 stole the registration, transferred the registration, and continued to maintain and use the registration for the BEDS.COM domain name and with the requisite bad faith for cybersquatting, seeking to profit from Plaintiff's BEDS.COM mark and its historical connection with the famous SLEEP NUMBER federally-registered and incontestable SLEEP NUMBER trademark, SLEEP NUMBER'S SELECT COMFORT mark, as well as the distinctive trademark BEDS.COM.

49. The domain name is identical or confusingly similar to these trademarks owned by Plaintiff, and exactly identical to SLEEP NUMBER'S distinctive BEDS.COM mark, and was so at the time Defendant registered, renewed, used and maintained the registration in the BEDS.COM domain name.

50. Thus, Defendant's registration, renewal, continued maintenance of the domain name registration for and use of the BEDS.COM domain name has caused and will continue to cause damage to Plaintiff, in an amount to be proved at trial, and is causing irreparable harm to Plaintiff for which there is no adequate remedy at law. Plaintiff's remedies at law are inadequate and it is entitled to an interim and permanent

transfer order, an order preventing further use or transfer by Defendant of the domain, and all other injunctive relief provided for under 15 U.S.C. 1125(d).

**SECOND CLAIM FOR RELIEF**
**Cybersquatting claim under the Anti-Cybersquatting Consumer Protection Act —**
**15 U.S.C. § 1125(d) against DOES 1-5, SHALOM, SILVER SCOPE**

51. Plaintiff realleges and incorporates by this reference each and every allegation set forth herein.

52. Defendants are in possession of a Stolen Domain after DOES 1-5 stole the registration, transferred the registration, renewed the registration, continued to maintain the registration for, transferred the domain to SHALOM and SILVER SCOPE, and all involved used the BEDS.COM domain name with the commensurate bad faith of cybersquatting, seeking to profit from the distinctive BEDS.COM mark and its connection with the famous SLEEP NUMBER marks SELECT COMFORT and SLEEP NUMBER.

53. Defendants' registration, renewal, continued maintenance of the domain registration for, and use of the BEDS.COM domain name has caused and will continue to cause damage to Plaintiff, in an amount to be proved at trial, and is causing irreparable harm to Plaintiff for which there is no adequate remedy at law. Plaintiff is also entitled to statutory and treble damages, and is also entitled to transfer and other interim and permanent injunctive relief for BEDS.COM provided by 15 U.S.C. 1125(d).

**THIRD CLAIM FOR RELIEF**
**Declaratory Judgment and Related Injunctive Relief re the Stolen Domain against**
**SHALOM and SILVER SCOPE**

54. Plaintiff realleges and incorporates by this reference each and every allegation set forth herein.

55. Defendant's registration and use of the Stolen Domain was and is unlawful, and the UDRP decision in the '2168 case is incorrect and contrary to law.

56. On information and belief, based on SHALOM and SILVER SCOPE'S statements made in the UDRP Complaint in the '2168 case, Defendant disagrees with Plaintiff, assert that Plaintiff is not entitled to registration of the Stolen Domain, and that

the UDRP decision is correct insofar as SHALOM and SILVER SCOPE are entitled to maintain registration of the Stolen Domain.

57. An actual, concrete and justiciable dispute exists between the parties.

58. Plaintiff seeks a declaration that Defendants' registration and use of the Stolen Domain was and is unlawful, that Plaintiff is the rightful registrant of the Stolen Domain, and that the UDRP decision is incorrect and contrary to law.

59. Plaintiff will be irreparably harmed if the Stolen Domain continues to be used by and registered to Defendants, and injunctive relief in favor of Plaintiff is warranted, including under 15 U.S.C. §1114 and 28 U.S.C. §2202, prohibiting Defendants from using or maintaining the .com domain or unjustly enriching themselves from its sale.

**FOURTH CLAIM FOR RELIEF**
**Conversion against DOES 1-5, SHALOM, SILVER SCOPE**

60. Plaintiff realleges and incorporates by this reference each and every allegation set forth herein.

61. The Stolen Domain is property that belongs to, and has belonged at all relevant times belonged to, Plaintiff.

62. DOES 1-5 hijacked and stole the Stolen Domain by impersonating an authorized representative of SLEEP NUMBER with Network Solutions and using fraudulent information to obtain access to the online account, and used that access to convert the domain name registration to DOES 1-5. The situs of the theft and damage felt was Minnesota, where Plaintiff is headquartered.

63. Defendants SHALOM and SILVER SCOPE purchased the domain from DOE hijacker for on information and belief 5% or less of its actual value, with at a minimum inquiry notice that DOES 1-5 did not possess legitimate title.

64. Upon learning of the Plaintiff's rightful ownership, Defendants have refused to return the Stolen Domain to Plaintiff upon demand and instead have intentionally and substantially interfered with the Plaintiffs ownership of, possession of and right to possess

the Stolen Domain, while continuing to publicly offer the Stolen Domain for sale. Defendants have consistently prevented Plaintiff from having access to the Stolen Domain.

65. Defendants SHALOM and SILVER SCOPE are in possession of the Stolen Domain and are the wrongfully listed registrants with ICANN.

66. Defendants had at a minimum inquiry notice of the illegitimacy of title that DOES 1-5 offered to sell to SHALOM and SILVERS SCOPE, and should have known possession of the domain was fraudulently obtained by DOES 1-5.

67. Defendants did not attempt to find any documents or purchase agreements to show the transfer of ownership, nor did they contact SLEEP NUMBER prior to (or indeed after) purchase.

68. On information and belief, Defendants SHALOM and SILVER SCOPE paid $172,500 for DOES 1-5 to transfer to them possession and registration of the Stolen Domain, which is less than 5% of what they knew at the time to be the value of the domain.

69. As a result of this conversion, SLEEP NUMBER has been damaged in an amount to be proven at trial, its remedies at law are inadequate and entitle it to interim and permanent injunctive relief including freezing of any transfer of the Stolen Domain, return of the Stolen Domain, and recovery of all profits obtained from it.

**FIFTH CLAIM FOR RELIEF**
**Fraudulent Transfer against DOES 1-5, SHALOM, SILVER SCOPE**

70. Plaintiff realleges and incorporates by this reference each and every allegation set forth herein.

71. The BEDS.COM domain is property that belongs to, and has belonged at all relevant times belonged to, Plaintiff.

72. DOES 1-5 obtained the Stolen Property from SLEEP NUMBER through a fraudulent transfer, namely a transfer made by changing the registration information without SLEEP NUMBER'S permission or authorization and resulting theft of the Stolen Domain, done with the actual intent to hinder, delay or defraud SLEEP NUMBER who at

the time of the transfer DOES 1-5 knew was a creditor with claims against DOES 1-5 as a result of the theft of the Stolen Domain.

73. DOES 1-5 then proceeded to institute a purported auction process, which resulted in the backroom transfer of the Stolen Domain to SHALOM and SILVER SCOPE for what on information and belief was only $172,500, which all Defendants knew to be only a fraction of the value of the Stolen Domain if it was sold as legitimate property or valued at its reasonably equivalent value.  No reasonably equivalent value was given.

74. SLEEP NUMBER was and remains a creditor of all Defendants, including by virtue of the claims asserted herein.

75. As a result, the transfers are void or voidable against DOES 1-5, SHALOM and SILVER SCOPE, and all Defendants are liable for the value of the Stolen Domain, the actual damages to Plaintiff, and the profits received in connection with the Stolen Domain.

76. Any further transfer of the domain by any of the Defendants after the filing of this Complaint is similarly a fraudulent transfer and is void or voidable, and is further in direct prohibition of the restrictions agreed to by Defendants respecting the Stolen Domain.  As previously stated, under the Uniform Domain Name Dispute Resolution Policy adopted by GoDaddy and Namecheap and agreed to by all Defendants in this action, Registrars and the Registrants agreed not to transfer the Stolen Domain for a period extending to no later than 15 business days after the later of the UDRP proceedings or this Court Action.  Specifically, the provisions in part state: "You may not transfer your domain name registration to another holder (i) during a pending administrative proceeding brought pursuant to Paragraph 4 or for a period of fifteen (15) business days (as observed in the location of our principal place of business) after such proceeding is concluded; or (ii) during a pending court proceeding or arbitration commenced regarding your domain name unless the party to whom the domain name registration is being transferred agrees, in writing, to be bound by the decision of the court or arbitrator. We reserve the right to cancel any transfer of a domain name registration to another holder that is made in

violation of this subparagraph." Plaintiff is the intended beneficiary of said provision and entitled to enforce compliance with the no-transfer restriction to protect its interests.

77. As a result of this fraudulent transfers, SLEEP NUMBER has been damaged in an amount to be proven at trial, its remedies at law are inadequate and entitle it to interim and permanent injunctive relief including a bar on any further transfer of the Stolen Domain, return of the Stolen Domain, and recovery of all profits obtained from it.

## PRAYER FOR RELIEF

WHEREFORE, SLEEP NUMBER prays that the Court grant the following relief:

1. Judgment in favor of SLEEP NUMBER and against Defendants on all claims;

2. An order temporarily and permanently enjoining Defendant from cybersquatting and conversion, and directing Defendant and all Registrars (including Namecheap) to transfer the domain name to Plaintiff, the placement of a transfer prohibition on the registration that prevents any transfer (except a transfer to Plaintiff), and barring any further use of the domain by Defendant, its agents or related parties;

3. Immediate transfer, by whatever means necessary, of the BEDS.COM domain name to SLEEP NUMBER;

4. Disgorgement of profits and wrongfully obtained funds;

5. Damages, including trebling of damages (at least against DOES 1-5) for willfulness;

6. Recovery of Plaintiff's attorneys' fees and costs incurred in this action under, among others 15 U.S.C. § 1117(a) and any other applicable statute, rule or common law;

7. Punitive damages for conversion against DOES 1-5; and

8. Such other, different, and additional relief as the Court deems just and proper.

| | |
|---|---|
| Dated: November 13, 2023 | Respectfully Submitted,<br><br>TROUTMAN PEPPER HAMILTON SANDERS LLP<br><br>By: s/*Justin D. Balser*<br>  Justin D. Balser<br>  Ben L. Wagner<br>  Bryan Rizza<br><br>  Attorneys for Plaintiff<br>  SLEEP NUMBER CORPORATION |